IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**ALLEN COLUMBUS BYRD,**

           **Petitioner,**

v.                                    **CRIMINAL ACTION NO.    4:14-cr-1**

**UNITED STATES OF AMERICA,**

           **Respondent.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Allen Columbus Byrd's ("Petitioner") Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 67 ("Mot.").[1] The Government opposed the motion. ECF No. 71 ("Resp. Opp'n"). Petitioner replied. ECF No. 72 ("Reply"). This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On August 10, 2021, Petitioner was named in a Three Count Indictment. ECF No. 1. Count One charged Petitioner with Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.* Count Two charged Petitioner with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* Count Three charged Petitioner with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). *Id.* On December 2, 2021, Petitioner pled guilty to Count Two of the Indictment. ECF Nos. 18, 19. On June 16, 2022, Petitioner was sentenced to 60 months' imprisonment, to be served consecutively to the sentence Petitioner received in criminal action 4:14-cr-1, followed by five

---

[1] Petitioner filed a *pro se* Motion for Compassionate Release on January 11, 2024. ECF No. 61. On September 26, 2024, the Court entered an Order appointing a Federal Public Defender. ECF No. 63. Petitioner filed a counseled Motion for Compassionate Release on November 22, 2024. ECF No. 67. This Order terminates both Motions.

1

years' supervised release. ECF No. 30.

According to the Presentence Investigation Report ("PSR"), in July 2020, the Newport News Police Department received a tip from a confidential informant who observed a man selling crack cocaine and heroin from inside an apartment. ECF No. 35 ¶ 6(1). The confidential informant also told the police that Petitioner possessed a firearm during sales. *Id.* Newport News Police conducted two controlled purchases of cocaine from Petitioner. *Id.* Newport News Police secured a search warrant for the apartment unit in which Petitioner was known to live. *Id.* ¶ 6(2). On July 23, 2020, Newport News Police executed the search warrant. *Id.* ¶ 6(3). When they approached the apartment, they observed a tube container being dropped out of a window. *Id.* Officers seized the tube, which contained cocaine. *Id.* Police then seized the following items from the apartment: (1) a .22 caliber short revolver, (2) three bags of white powder, (3) two clear bags of cocaine, (4) a digital scale, and (5) a clear bag containing cocaine, heroin, and fentanyl. *Id.* ¶ 6(4). Petitioner stated that everything illegal in the apartment was his, along with the firearm. *Id.* ¶ 6(5). The PSR assessed Petitioner with a Criminal History Category of V, and a recommended Guidelines Sentence of 60 months' imprisonment. *Id.* ¶ 127. Petitioner has never received a formal diagnosis of any mental health disorder. *Id.* ¶ 98. Petitioner reported an extensive alcohol and drug history. *Id.* ¶ 100. Petitioner is incarcerated at FCI Butner and has a projected release date of August 5, 2027.[2]

Petitioner submitted an "Inmate Request to Staff" asking for compassionate release that was marked received on September 7, 2022. Reply Ex. 4 at 3, ECF No. 42-1. On November 22, 2024, Petitioner filed the instant Motion. ECF No. 67.

---

[2] *See* Federal Bureau of Prisons, "Find an Inmate," *BOP.gov*, https://www.bop.gov/inmateloc/ (last visited Jan. 16, 2025).

2

## II. LEGAL STANDARD

### A. The Threshold Requirement Standard

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies.").

In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the First Step Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" is defined by the United States Sentencing Commission ("Sentencing Commission") in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13. Yet after the First Step Act amended § 3582(c)(1)(A) to allow defendants to petition the district court directly without clearance from the BOP, U.S.S.G. § 1B1.13 became advisory and nonbinding on courts' application of § 3582(c)(1)(A) because § 1B1.13 was no longer an "applicable" Sentencing Commission policy statement. *See United States v. McCoy*, 981 F.3d 271, 276, 283 (4th Cir. 2020). Courts were thus "empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). The most recent amendments to the Sentencing Guidelines went into effect on November 1, 2023, and U.S.S.G. § 1B1.13 now contemplates that a defendant may file a motion for compassionate release directly with the district court. *See* U.S.S.G. § 1B1.13(a) (2023). Therefore, § 1B1.13 is now an "applicable" policy statement under § 3582(c)(1)(A), and the Court must ensure that a sentence reduction granted under § 3582(c)(1)(A) is "consistent with" that Guideline. 18 U.S.C. § 3582(c)(1)(A); *see Brown*, --- F. Supp. 3d ---, No. JKB-08-00415, 2023 WL 8653179, at *2 (D. Md. Dec. 13, 2023).

Section 1B1.13(b) identifies five broad categories by which defendants may demonstrate extraordinary and compelling reasons to reduce a sentence: (b)(1) medical circumstances; (b)(2) the defendant's age; (b)(3) family circumstances; (b)(4) whether the defendant was a victim of

abuse; (b)(5) other reasons (catch-all provision);[3] and (b)(6) whether the defendant received an unusually long sentence. § 1B1.13(b)(1)–(6). Therefore, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, when evaluating whether extraordinary and compelling circumstances exist to modify a sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Threshold Requirement

The Court finds that Petitioner has satisfied the threshold requirement. The Government argues that Petitioner failed to apply to the warden for compassionate release, and therefore has not satisfied the threshold exhaustion requirement. Resp. Opp'n at 3. When the Government filed its Response in Opposition, this argument made sense: Petitioner's counsel was not "able to speak to [Petitioner] or otherwise confirm the status of [his] request to the warden." Mot. at 5. Now, the record clearly demonstrates that Petitioner sought compassionate release. Petitioner submitted an "Inmate Request to Staff" asking for compassionate release. *See* Reply Ex. 4 at 3, ECF No. 72-1. The request was marked "received" on September 7, 2022.[4] *Id.* Petitioner sought compassionate release from the warden and more than 30 days passed before he filed this Motion. Petitioner has therefore met the threshold requirement.

---

[3] This catch-all provision allows courts to continue to exercise discretion in considering "any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284; *see Brown*, 2023 WL 8653179, at *2 ("This catchall maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release.").

[4] Petitioner states in his Reply that the request was marked "received" on September 7, 2023. The Court believes that the request was marked "received" and dated September 7, 2022. In either event, more than thirty days passed between the request and Petitioner's Motion. The Legal Consolidation Center of the BOP advised the U.S. Probation Office that they did not receive any requests for Compassionate Release" from Petitioner. 4:14-cr-1, ECF No. 70. Exhibit 4 to Petitioner's Reply clearly shows the BOP received Petitioner's request for compassionate release.

5

### B. Petitioner's Compassionate Release Request

The Court will now address whether Petitioner has set forth extraordinary and compelling reasons to reduce his sentence. For the following reasons, Petitioner's arguments are not extraordinary and compelling reasons for compassionate release.

#### i. Extraordinary and Compelling Reasons

Petitioner argues that two circumstances justify his compassionate release: (1) Petitioner's "combined medical conditions substantially diminish his ability to provide self-care in prison," and (2) "the multiple-year-long delays in treatment indicate that the BOP is not providing [Petitioner]" with adequate care. Mot. at 7. The Court will address these arguments in turn.

##### a. Combined Medical Conditions

Petitioner first argues that his combined medical conditions warrant his compassionate release. Medical conditions can constitute extraordinary and compelling reasons where Petitioner "is suffering from a terminal illness" or where medical conditions "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(A); U.S.S.G. § 1B1.13(b)(1)(B)(iii). None of Petitioner's conditions are terminal. Mot. at 7 n.2.

Petitioner has likewise not proven that his medical circumstances substantially diminish his ability to provide self-care in a correctional facility. Petitioner, age 67, asserts that he suffers from high cholesterol, hypertension, and asymptomatic HIV. Mot. at 7. Petitioner argues that "[s]ome of these conditions are potentially life-threatening and place [Petitioner] at a significantly greater risk of developing a fatal heart condition or contracting a severe infectious disease, such as COVID-19." *Id.*

Each of Petitioner's ailments, outlined above, are being managed in the BOP. At an

6

October 8, 2024, clinical encounter, a provider put in a "renew medication order" for Rosuvastatin Calcium and instructed Petitioner to "[t]ake one tablet (20 MG) by mouth daily for control of cholesterol x 365 day(s)." 4:21-cr-52, Mot. Sealed Ex. 2, ECF No. 40 at 11 ("sealed medical records")[5]. At a July 24, 2024, clinical encounter, a provider put in "a renew medication order" in for Losartan potassium and instructed Petitioner to "[t]ake one tablet (25 MG) by mouth each day for blood pressure x 180 day(s)." *Id.* at 28. At the October 8, 2024, clinical encounter, a provider put in "a renew medication order" for two medications related to Petitioner's asymptomatic HIV. *Id.* at 11. Petitioner's medical records show that he is receiving treatment for his high blood pressure, cholesterol, and asymptomatic HIV. *See id.* Petitioner has not established that the BOP lacks resources to adequately mange his medical needs.

Petitioner argues that managing his chronic health conditions "requires care and attention that is utterly lacking in the federal prison system." Reply at 3. But Petitioner's medical records "demonstrate that his ailments are well managed" at FCI Butner. *United States v. Freeman*, 617 F. Supp. 3d 386, 396 (E.D. Va. 2022), *aff'd*, No. 22-6921, 2023 WL 4797316 (4th Cir. July 27, 2023). And generally, "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Molina*, 2021 WL 1323402 (E.D. Va. Apr. 8, 2021) (internal citation omitted). Accordingly, Petitioner's combined medical conditions do not present an extraordinary and compelling reason for his compassionate release.

### b. Delays in Petitioner's Medical Treatment

Next, Petitioner argues that delays in his treatment for the osteoarthritis in his hip suggests he is not receiving adequate care in prison. Mot. at 7. Specifically, Petitioner argues that his hip replacement surgery has been needlessly delayed. *Id.* at 4. Additionally, Petitioner argues his

---

[5] Petitioner submitted two Motions for Compassionate Release. But Petitioners sealed medical records were only filed in Criminal Action No. 4:21-cr-52. Thus, the Court cites to that case's ECF No.

hernia surgery was also unnecessarily delayed. *Id.* To support this argument, Petitioner cites two cases from other districts in which the courts granted compassionate release based on unacceptable delays in treatment. *Id.* at 9–10. Petitioner cites *United States v. Beck*, 425 F. Supp. 3d 573 (M.D.N.C. 2019) and *United States v. Smith*, 464 F. Supp. 3d 1009 (N.D. Iowa 2020) for the proposition that the BOP's mismanagement of a petitioner's disease can constitute an extraordinary and compelling reason to reduce a sentence under § 3582(c)(1)(A)(i). Mot. at 9.

In *Beck*, petitioner reported lumps in her breast to prison officials and medical imaging suggested she had cancer. 425 F. Supp. 3d at 581. The BOP waited eight months to take a biopsy which confirmed she had invasive breast cancer. *Id.* Two months later, the BOP took her to surgery and the disease had metastasized. *Id.* After surgery, the BOP disregarded her surgeon's order of a follow-up after one week and did not return her to the surgeon for six weeks. *Id.* The BOP delayed scheduling an oncology appointment for five months, and she was unable to get chemotherapy or radiation therapy. *Id.* "During these lengthy delays," the cancer spread to her lymph nodes. *Id.* at 580. The delays also increased the risk that her cancer had spread or would recur and compromised her prospects of survival. *Id.* at 581. The court in *Beck* noted that the BOP blamed logistical issues for its failure and provided erroneous information about her appointments to the court. *Id.* The court determined that if she was in custody, she faced "a substantial likelihood of substandard medical care for her life-threatening disease." *Id.*

In *Smith*, petitioner suffered from "a serious and advanced illness—stage IIIA non-small cell lung cancer." 464 F. Supp. 3d at 1018–19. Petitioner received a precautionary chest x-ray in October 2017, which revealed a lung nodule. *Id.* at 1011. A CT scan eight months later, in July 2018, showed that the nodule had grown, indicating that it could be cancerous. *Id.* at 1019. "Nothing further was done until January 2019," when a PET scan revealed a mass on his lung that

8

was cancerous. *Id.* Petitioner was diagnosed with cancer in September 2019, but medical records suggested that the BOP knew or should have known that he had signs of lung cancer that could have been addressed much sooner. *Id.*

Petitioner argues that while these cases are distinguishable on the facts, "the same type of delay is evident in this case." Mot. at 10. But this argument does not persuade the Court. The delays are different.

First, the Court will address the delays related to Petitioner's hip replacement. The two delays Petitioner raises are connected to one another. On December 14, 2022, Petitioner saw a medical provider who determined he had osteoarthritis of the hip. Sealed medical records at 258. On August 11, 2023, a consultant saw Petitioner and recommended he undergo hip replacement surgery, but not before having his hernia addressed. *Id.* at 31. On January 22, 2024, Petitioner's hernia repair was completed. *Id.* at 100. On April 9, 2024, Petitioner underwent an orthopedic surgery consult, and the provider stated Petitioner needed dental work before his surgery. *Id.* at 70. Less than two weeks later, dental initially reported that it would be at least six months before Petitioner could be cleared for surgery. *Id.* at 64. On May 29, 2024, dental clearance was complete, and Petitioner was able to proceed with his surgery. *Id.* at 51. On October 21, 2024, a preoperative nasal swab tested positive for Methicillin resistant Staphylococcus aureus ("MRSA"). *Id.* at 2. The provider stated that the surgery would need to be rescheduled after Petitioner was retested and cleared. *Id.*

The delays related to Petitioner's hip replacement are vastly different than the delays in *Beck*. As noted above, the BOP in *Beck* blamed logistical issues for its failure. *Beck*, 425 F. Supp. 3d at 581. Here, however, the delays are the natural result of Petitioner's own medical needs. Medical providers determined that Petitioner's hernia, dental issues, and MRSA needed to be

9

addressed before his hip replacement surgery. The delays in this case are not merely logistical issues, like the issues cited in *Beck*. The BOP in *Beck* had no medical justification for its course of action. *Id.* Here, the opposite is true—Petitioner's medical needs required delaying his surgery. Thus, the delays related to Petitioner's hip replacement do not constitute an extraordinary and compelling reason for his release.

The Court will now consider the delays related to Petitioner's hernia. Petitioner first noted his hernia on December 14, 2022. Sealed medical records at 273. A provider gave Petitioner a hernia belt with compression pads. *Id.* at 145. The hernia belt was later exchanged for a smaller one. *Id.* at 92. Providers continually noted Petitioner's condition. On October 5, 2023, a provider noted that Petitioner had no "extreme constant abdominal/pelvic pain," and had "no nausea, no vomiting, and continues to have regular bowel movements." *Id.* at 6. A provider noted that the hernia was "likely not incarcerate" and that Petitioner was not exhibiting distress. *Id.* A provider first noted that his hernia was not reducing as easily as it once did on October 5, 2023. *Id.* This same encounter, the provider submitted a "New Consultation Request" for Petitioner's hernia to be evaluated "urgently," with a target evaluation date of October 20, 2023. *Id.* at 5. Just over three months later, on January 22, 2024, Petitioner's hernia was repaired. *Id.* at 100.

The delays here are different from the delays in *Beck* and *Smith* for at least three reasons. First, the ailments in *Beck* and *Smith* went unmonitored for an extended period. There was no attempt to diagnose or treat their conditions during those delays. In that time, the diseases got markedly worse. Here, providers were monitoring Petitioner's hernia closely, keeping track of his symptoms. Providers also issued Petitioner a hernia belt to reduce his pain. When BOP providers determined they could no longer manage Petitioner's symptoms with a hernia belt and could not easily reduce the hernia, his general surgery appointment was made urgent. The hernia was

repaired shortly thereafter. Second, in *Smith*, there were "warning signs that the BOP did not act on." Mot. at 10 (citing *Smith*, 464 F. Supp. 3d at 1012). The same warning signs described in *Smith* are not present here. As noted above, when Petitioner's hernia could not be managed in the same way it once was, a provider made the general surgery consult urgent. Relatedly, unlike the providers here, the providers in *Smith* failed to treat the ailment after a doctor made the matter "urgent." *Smith*, 464 F. Supp. 3d at 1020. Third, the Court notes that Petitioner's hernia was repaired on January 22, 2024. Sealed medical records at 100. Petitioner has not suffered any adverse effects like the adverse effects described in the cases Petitioner cites. *See Beck*, 425 F. Supp. 3d 573; *See also Smith*, 464 F. Supp. 3d 1009. Thus, the delays Petitioner experienced with his hernia do not constitute an extraordinary and compelling reason for his release.

### ii. 3553(a) Factors

Even if Petitioner correctly asserted an extraordinary and compelling reason for his compassionate release, the 18 U.S.C. § 3553(a) factors do not support Petitioner's release. A district court must consider the applicable § 3553(a) sentencing factors in deciding whether to exercise its discretion to reduce a defendant's term of imprisonment. *United States v. Bond*, 56 F. 4th 381, 384 (4th Cir. 2023).

The Court will first consider the nature and circumstances of Petitioner's offense. 18 U.S.C. § 3553(a)(1). Petitioner pled guilty to Possession of a Firearm in Furtherance of a Drug Trafficking crime. In the Court's opinion, this is a serious offense. The seriousness of Petitioner's conduct for the underlying offense remains the same. Petitioner was sentenced to the mandatory minimum sentence of 60 months' imprisonment. As the sentencing judge acknowledged, a "crime involving firearms and narcotics is extremely serious." ECF No. 33 at 4. Granting compassionate release would undermine a sentence that was imposed to reflect that seriousness. 18 U.S.C. §

3553(a)(2)(A). These factors weigh against compassionate release.

Petitioner's history and characteristics do not weigh in favor of compassionate release either. 18 U.S.C. 3553(a)(1). Petitioner argues that he is unlikely to reoffend. Mot. at 12. True, Petitioner, age 67, is less likely to reoffend than younger offenders. *See* Mot. at 12–13. But Petitioner's own conduct, which occurred just four years ago, undermines this argument. Petitioner also has a lengthy criminal history that includes weapon charges, drug charges, and other violent crimes. *See* PSR ¶¶ 32–59. The Court is not convinced that, if Petitioner receives a reduced sentence, he will not reoffend. This reality does not weigh in favor of compassionate release. However, there are mitigating factors. Petitioner has engaged in prison programming: he has taken courses in health, job skills, ecology, and creative writing. Mot. at 12. He has also maintained a positive attitude while incarcerated and has not received any disciplinary violations. *Id.* at 12; *Id.* at 7. The Court commends Petitioner for his achievements during incarceration, but "they do not outweigh the Court's findings as to the other factors." *United States v. Woolridge*, 2021 WL 415131 (E.D. Va. Feb. 5, 2021).

The Court finds that reducing Petitioner's sentence below the mandatory minimum would not promote respect for the law. 18 U.S.C. § 3553(a)(2)(A). Petitioner has "moved in and out of prison on drug charges." Mot. at 12. Petitioner's time in prison has not deterred him from reoffending. Reducing his sentence would not deter others from similar conduct either.

The Court is entitled to consider the amount of time Petitioner has already served as one factor in the § 3553(a) analysis. *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (internal citations omitted). Petitioner has served approximately 55 percent of his sentence and is projected to be released August 5, 2027. Mot. at 3. The Court does not believe that reducing Petitioner's mandatory minimum sentence by nearly half would provide just punishment for Petitioner's

12

serious offense.

Therefore, the Court originally imposed a sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. In balancing the applicable § 3553(a) factors, the Court concludes those factors weigh against Petitioner's release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release is **DENIED**. ECF No. 67.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Newport News, Virginia
February 3, 2025

Raymond A. Jackson
United States District Judge